**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BILLY RAY TURNER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 4:13CV02470 ERW |
| | ) | |
| JAY CASSADY, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on the Report and Recommendation of United States

Magistrate Judge Nannette Baker, pursuant to 28 U.S.C. § 636(b)(1), recommending the denial

of Petitioner Billy Ray Turner's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254.

ECF No. 66. Petitioner filed objections to the Report and Recommendation, [ECF No. 110], after

a hearing on multiple motions before the Court on March 22, 2016. When a party objects to a

Report and Recommendation, the Court must "make a *de novo* review determination of those

portions of the record or specified proposed findings to which objection is made." *United States

v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (quoting 28 U.S.C. § 636(b)(1)). To trigger *de

novo* review in most cases, "objections must be timely and specific." *Thompson v. Nix,* 897 F.2d

356, 358 (8th Cir.1990). However, the Eighth Circuit Court of Appeals has been willing to

"liberally construe[ ]" otherwise general *pro se* objections to require a *de novo* review of all

"alleged errors." *See Hudson v. Gammon,* 46 F.3d 785, 786 (8th Cir.1995).

## I.    BACKGROUND

On October 4, 2006, Petitioner was found guilty by a jury of three counts of statutory

sodomy in the first degree and one count of incest, in the Circuit Court of the City of Saint Louis,

Missouri. *See State of Missouri v. Billy Turner*, Cause No. 04-CR74573-01 and 22051-0364

(22nd Judicial Circuit). ECF No. 53-5. Petitioner was sentenced on November 17, 2006, to a

term of imprisonment of fifteen years on each count of statutory sodomy and four years for

incest, with the sentences to be served consecutively. ECF No. 53-5 at 170-173. Petitioner filed a

direct appeal of his conviction with the Missouri Court of Appeals of the Eastern District. ECF

No. 53-6. The Missouri Court of Appeals of the Eastern District affirmed the ruling of the Circuit

Court on appeal. ECF No. 53-8 at 1-3.

Petitioner then filed a *pro se* Rule 29.15 motion in state court, alleging twenty-four

grounds of ineffective assistance of trial counsel and one ground for improper judge sentencing.

In his form motion, he alleged ineffective assistance of appellate counsel, but stated no facts in

support of that ground. ECF No. 53-1 at 9-82. The state Motion Court denied Petitioner's claims.

ECF No. 53-1 at 83. The Missouri Court of Appeals affirmed the Motion Court's ruling on

appeal. ECF No. 53-4 at 1-9.

Petitioner filed his initial *habeas corpus* motion in this Court *pro se* on December 9,

2013. He filed an amended *habeas corpus* petition on January 2, 2014, claiming five grounds of

ineffective assistance of trial counsel in violation of the Sixth Amendment and a violation of the

due process clause of the Fourteenth Amendment in Ground six. ECF No. 10. In response to the

Report and Recommendation, Petitioner filed over fifteen motions. The Court held a hearing on

February 22, 2016, to resolve the motions. The Court denied these motions, and instructed

Petitioner to file objections to the Report and Recommendation and include, in his objections,

any remaining arguments. Petitioner, in response, filed a "Petitioner's Compliance with Court

Order to File exceptions to the United States Magistrates Recommendations," which the Court

interprets as his objections to the Report and Recommendation. ECF No. 110. Petitioner also

filed a motion for an evidentiary hearing and for appointment of counsel. ECF No. 111.

In Ground One of the Petition, Petitioner alleges his trial counsel failed to raise the corroboration rule during the 491[1] hearing; in Ground Two, Petitioner alleges trial counsel failed to effectively cross-examine and impeach, Marilyn McCoy, Dawn Dick, Victim, and the S.A.F.E.[2] examiner, Catherine Blevins. He also alleges his trial counsel failed to recuse, failed to call an adverse defense witness, and failed to impeach the credibility of defense witnesses; in Ground Three, Petitioner alleges trial counsel failed to call numerous other defense witnesses during the trial; in Ground Four, he alleges trial counsel failed to reasonably investigate Petitioner's case and counsel failed to obtain crucial evidence that would have established Petitioner's innocence; in Ground Five, he alleges trial counsel failed to call a medical expert to testify; and in Ground Six, he alleges newly discovered evidence clearly and convincingly establishes his innocence. ECF No. 10 at 21-44.

Respondent generally contends Petitioner's claims are procedurally defaulted for failure to raise them in state court proceedings, and those exhausted by state court proceedings resulted in decisions, in state court, that were not contrary to, or did not involve an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. Respondent also argues the state court decisions were not based on an unreasonable determination of facts in light of the evidence presented in the state court proceedings. In support, Respondent cites the holding in *Harrington v. Richer*, 131 S. Ct. 770, 786 (2011), "A state court's determination that a claim lacks merit precludes federal habeas relief so long as

---

[1] A Chapter 491 hearing is a pre-trial proceeding under Missouri Revised Statute § 491, where a judge determines whether a child victim will suffer mental and emotional damage if forced to undergo cross examination at trial. During this hearing the defendant may cross examine the child victim and the testimony is preserved for use at trial. *State v. Sprinkle*, 122 S.W.3d 652, 660 (Mo. Ct. App. 2003)
[2] S.A.F.E. is an acronym for Sexual Assault Forensic Examination. *See Woods v. State,* 458 S.W.3d 352, 353 (Mo. Ct. App. 2014)

'fair[]minded jurists could disagree' on the correctness of the state court's decision." ECF No. 22. More specifically, Respondent argues Petitioner defaulted on Grounds One and Six because they are barred from review due to Petitioner's failure to raise them on direct appeal or in his motion for post-conviction relief, citing *Sweet v. Delo,* 125 F.3d 1144, 1149 (8th Cir. 1997). In opposition to Petitioner's Ground Two, Respondent states Petitioner defaulted on parts of Ground Two which were not raised on direct appeal or in the state habeas proceeding, specifically, trial counsel's failed to impeach Marilyn McCoy and Dawn Dick as adverse witnesses. Respondent further argues the remainder of Petitioner's claims, Grounds Three, Four, and Five, previously considered in state court, fail to meet standards requiring relief. ECF No. 22. Respondent asserts a writ of *habeas corpus* should not be granted.

## II.    STANDARD

Under 28 U.S.C. § 2254(a), a state prisoner may petition for a writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." The "function of habeas . . . is to test by way of an original civil proceeding . . . the very gravest allegations." *Townsend v. Sain*, 372 U.S. 293, 311-12 (1966), *overruled on other grounds*, *Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992). Importantly, "[s]tate prisoners are entitled to relief on federal habeas corpus only upon proving that their detention violates the fundamental liberties of the person, safeguarded against state action by the Federal Constitution." *Wessling v. Bennett*, 410 F.2d 205, 209 (8th Cir. 1969) (quoting *Townsend*, 372 U.S. at 312).

A § 2254 petition may be based upon a violation of the Sixth Amendment right to effective assistance of counsel. *See Williams v. Roper*, 695 F.3d 825 (8th Cir. 2012). When a habeas petitioner claims ineffective assistance of counsel, the Court's decision must be made "on an ad hoc basis. In each case [the Court] must weigh, among other factors, the time afforded

counsel, the experience of counsel, the gravity of the charge, and the complexity of the possible defenses as well as the accessibility of witnesses to counsel." *Wolfs v. Britton*, 509 F.2d 304, 309 (8th Cir. 1975). To be successful on a claim of ineffective assistance of counsel, the petitioner must satisfy a two-prong test. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). Specifically, the petitioner must demonstrate: (1) counsel's performance was deficient in that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) counsel's "deficient performance prejudiced the defense." *Id.* at 687; *see also Auman v. U.S.*, 67 F.3d 157, 162 (8th Cir. 1995). The Court may address the two *Strickland* prongs in any order, and if a petitioner fails to make a sufficient showing on one prong, the Court need not address the other. *Strickland*, 466 U.S. at 697; *see also U.S. v. Walker*, 324 F.3d 1032, 1040 (8th Cir. 2003) (finding no need to address the second prong of *Strickland* after petitioner failed to satisfy the first prong).

To prove deficient performance, a petitioner must demonstrate "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688; *see also Armstrong v. Kemna*, 534 F.3d 857 (8th Cir. 2008) (stating a petitioner must demonstrate "trial counsel's performance was so deficient as to fall below an objective standard of the customary skill and diligence displayed by a reasonably competent attorney"). "Only reasonable competence, the sort expected of the 'ordinary fallible lawyer,' . . . is demanded by the Sixth Amendment." *White v. Helling*, 194 F.3d 937, 941 (8th Cir. 1999) (internal citation omitted). The standard "is necessarily a general one. No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." *Bobby v. Van Hook*, 558 U.S. 4, 7 (2009) (citing *Strickland*, 466 U.S. at 688-89) (internal quotations

omitted). An evaluation of "reasonableness" requires consideration of all the facts, which must be viewed "as they existed at the time of counsel's conduct." *Marcrum v. Luebbers*, 509 F.3d 489, 502 (8th Cir. 2007). Similarly, the Court must view the alleged deficiency of counsel's performance "in light of professional norms prevailing when the representation took place." *Sinisterra v. U.S.*, 600 F.3d 900, 906 (8th Cir. 2010). In this sense, restatements of professional standards are useful "as 'guides' to what reasonableness entails, but only to the extent they describe the professional norms prevailing when the representation took place." *Van Hook*, 558 U.S. at 7 (internal citation omitted). The petitioner still must "overcome the strong presumption that his counsel's conduct fell within the wide range of reasonable professional assistance." *Davis v. Norris*, 423 F.3d 868, 877 (8th Cir. 2005); *Strickland*, 466 U.S. at 689.

Of particular relevance to claims of insufficient investigation are the following principles:

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.

*Strickland*, 466 U.S. at 690–91. Thus, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* at 691; *Holder v. U.S.*, 721 F.3d 979, 994 (8th Cir. 2013). However, a particular decision by counsel not to investigate must be "directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691.

"A deficiency is prejudicial when there is a reasonable probability, that is, one 'sufficient to undermine confidence in the outcome,' that the result of the trial would have been different but for the deficiency." *Close v. U.S.*, 679 F.3d 714, 716 (8th Cir. 2012) (quoting *Strickland*, 466 U.S. at 694). A petitioner bears the burden of showing such a reasonable probability. *Lawrence v. Armontrout*, 961 F.2d 113, 115 (8th Cir. 1992).

In order for a federal court to grant an application for a writ of habeas corpus brought by a person in custody by order of a state court, the petitioner must show the state court decision:

> "**(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

28 U.S.C. § 2254. State court decisions are contrary to federal law if "the state court either 'applies a rule that contradicts the governing law set forth in our cases,' or 'confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.'" *Penry v. Johnson*, 532 U.S. 782, 792 (2001) *quoting Williams v. Taylor*, 529 U.S. 362, 404-05 (2000). An unreasonable application of precedent is found where the state court uses the correct governing legal principle, but unreasonably applies the principle to the facts of the case. *Ryan v. Clarke*, 387 F.3d 785, 790 (8th Cir. 2004). Therefore a federal court making an "unreasonable application" inquiry, should determine whether the state court's interpretation was objectively reasonable, and although the Supreme Court has not defined "objectively reasonable", it should be noted that "an unreasonable application of federal law is different from an incorrect application of federal law." *Williams*, 529 U.S. at 410.

## III.    DISCUSSION

Petitioner's objections to the Magistrate Judge's Report and Recommendation do not track the substance of the Report and Recommendation and he makes a multitude of arguments on his perceived failings of the Report and Recommendation. The Court will liberally construe each of Petitioner's arguments to give them effect.

The Report and Recommendation recommends denying each of Petitioner's grounds for

relief, finding the state court's decisions on Petitioner's claims of ineffective assistance of counsel were not contrary to clearly established federal law as determined by the Supreme Court of the United Sates, did not involve an unreasonable application of federal law, and did not involve an unreasonable determination of the facts. The Magistrate Judge ruled Petitioner's claim of actual innocence fails, because he produces no new evidence, and even if the new evidence had been presented, it would not have proved his innocence. Finally, Magistrate Judge recommended no certificate of appeal be issued. [ECF No. 66].

*A. Sufficiency of the Record before the Magistrate Judge*

Petitioner argues the Report and Recommendation should be rejected by this Court because the Magistrate Judge did not have certain evidence before her in the record, specifically the victim's medical records, an affidavit where he alleges the victim has recanted again, and a second affidavit, which he claims is new evidence. Petitioner also claims the Assistant Attorney General, along with law enforcement, has harassed and terrorized him. ECF No. 72-1.

*Habeas corpus* proceedings under 22 U.S.C. § 2254 are limited proceedings, and involve a determination of whether a person, in custody, under a state-court judgment, should be released because their custody violates the Constitution. 28 U.S.C. § 2254. The Court may expand the record by ordering parties to submit additional materials related to the petition. Rule 7, Rules Governing Section 2254 Cases. However, this requires one of two things to occur: the Court, on its own motion, must permit the petitioner to expand the record, or the petitioner must show good cause. *United States v. Carlino*, 400 F.2d 56, 58 (2d Cir. 1968) (affirming district court ruling the affidavit was insufficient to put the claim of coercion into issue). "In any event, expansion of the record does not necessarily require that the district court consider that evidence in evaluating the merits of the habeas claim." *Moore v. Mitchell*, 708 F.3d 760, 784 (6th Cir. 2013).

Petitioner filed a second set of affidavits with his various motions, after the Magistrate Judge issued her report and recommendation. Petitioner cites, *Jones v. Norman*, 633 F.3d 661 (8th Cir. 2010), for support that an uncontested affidavit must be accepted as true. In *Jones*, the Eighth Circuit affirmed a district court's ruling, holding where the state did not advance a procedural default argument, it was waived, and the district court was within its right to not raise the issue *sua sponte*. *Id*. Petitioner attempts to stretch the holding of *Jones* too far, and the Court does not agree with Petitioner's interpretation of *Jones*. Unsupported, self-serving statements do not establish a basis for relief, by themselves. *United States v. Apfel*, 97 F.3d 1074, 1077 (8th Cir. 1996). Further, courts have found a self-serving affidavit containing hearsay allegations does not require an evidentiary hearing in the habeas context. *United States v. Curry*, 497 F.2d 99, 101 (5th Cir. 1974). Nevertheless, the Court has considered Petitioner's affidavits, although it will not be granting an evidentiary hearing.

The record before the Magistrate Judge was sufficiently complete. The medical evidence, which Petitioner claims would show his innocence, was reviewed by the Court, *in camera*, and does not show Petitioner is innocent. It states Petitioner took Victim to the emergency room, and he, not Victim, reported to medical staff what Victim allegedly told him. The medical records only show Petitioner made the allegation on behalf of the victim, and do not provide credence to Petitioner's arguments. The affidavit is a self-serving affidavit, based on hearsay, unsubstantiated and vague allegations. It is not the type of reliable evidence as identified in *Schlup v. Delo*, 513 U.S. 298 (1995). The Court will further discuss the medical records later in the opinion. Furthermore, in the present case, there has always been an issue with Victim recanting, and the trial court heard evidence of recantations at the time of trial. This cannot be newly discovered evidence because Petitioner was aware of these records throughout trial. Petitioner's objection in

regards to the Report and Recommendation being in error for an incomplete record is denied.

*B. Defaulted Claims*

A state prisoner seeking federal relief has a responsibility to first exhaust available remedies in state court, allowing the state court to consider and correct alleged violations of federal rights granted to prisoners. *Walker v. Martin,* 562 U.S. 307, 315 (2011). A default results from the failure to properly present claims in state court. *Id.* A federal court will not review defaulted claims. *Id.* Default, in limited circumstances, may be overcome, if a federal habeas petitioner can demonstrate either cause and actual prejudice as a result of the alleged violation of federal law, or demonstrate the default will result in a fundamental miscarriage of justice. *Coleman v. Thompson,* 501 U.S. 722, 750 (1991). However, there is a high burden on a federal habeas petitioner who must demonstrate some objective factor external to the defense which impeded counsel's efforts in complying with the procedural rules of the state court. *Murry v. Carrier,* 477 U.S. 478, 488 (1986). Neglecting, forgetting or otherwise failing to present the claim before a state court will not suffice.

1. Ground One

Petitioner defaulted on his Ground One claim alleging his trial counsel was ineffective for failing to raise the Corroboration Rule during his 491 hearing. This claim was raised by Petitioner in Ground 8(a) of his Motion to Vacate, but he failed to raise the claim before the Missouri Court of Appeals. While the Magistrate Judge appropriately declined to substantively review Ground One, because Respondent addressed all of Petitioner's arguments in Ground One, the Court will address these claims.

Petitioner believes his trial counsel failed to provide effective assistance of counsel at the 491 hearing held September 26, 2005, and at trial by not raising the "corroborating rule." He

believes facts leading to his conviction were so contradictory and inconsistent the State should have been required to corroborate the facts to sustain the 491 motion. Additionally, he blames trial counsel for not cross-examining Victim at trial. Petitioner's reliance on *State v. Silvey,* 894 S.W.2d 662, 673 (Mo. 1995) is misplaced.

In *Silvey*, a defendant was convicted of two counts of sodomy involving a child victim. The court ruled, "Corroboration is not mandated[,] unless the victim's testimony is so contradictory and in conflict with physical facts, surrounding circumstances, and common experience, that its validity is thereby rendered doubtful." 894 S.W.2d at 673 (citation omitted).

The Court has thoroughly reviewed the trial transcript word for word. Considering the strong evidence supporting Petitioner's guilt, corroboration is not mandated under the facts of this case. No fault is found on trial counsel by not raising the "corroboration rule." Further, *State v. Silvey* has been abrogated and the corroboration rule has been abolished in Missouri. *State v. Porter*, 439 S.W.3d 208, 211-213 (Mo. 2014).

Petitioner claims trial counsel was also ineffective by deciding not to cross-examine Petitioner's eight and one-half year old daughter. She testified to her recantations with explanations. Trial counsel was wise in not risking inflaming the jury by trying to draw out "inconsistencies" of this nature of a person of tender years. One example of an inconsistency Petitioner argues required cross-examining was when she said Petitioner hurt her every time she went there, yet at another point in her testimony she stated he hurt her once. In another example, he advocates his counsel should have cross-examined his daughter about her statement Petitioner got poop on his "wee wee" all the time, but in her deposition she said it happened once. Other issues he raises based on failure to cross-examine Victim, like these examples, are not outcome determinative. Petitioner seems to have scoured the record to identify inconsistencies without

realizing the extreme prejudice of having Victim testify Petitioner hurt her once or more than once; the testimony stands he hurt her. Furthermore, exposing to the jury he got his daughter's feces on his penis is extraordinarily condemning. How he got feces on his penis, and whether these incidents happened once or more than once should obviously not be emphasized to the jury. Trial counsel wisely did not pursue what Petitioner raises. There was no ineffective assistance of counsel, here.

Additionally, Petitioner fails to consider the corresponding incriminating testimony of Petitioner's threats Victim was prepared to expose. Victim testified if she told anyone about what Petitioner was doing to her, he would shoot her family, "my moma, and my papas." She testified Larry Dick and Larry Owens were her papas. She testified Petitioner said she would shoot them in the forehead with a pistol he kept under the seat of his truck. She testified Petitioner showed her the gun and placed her hand on it. ECF No. 53-10 at 282-284.

Victim then explains in her testimony, she did tell Petitioner's counsel, counsel's "helper," (investigator) and Pam Waldo, Petitioner did not hurt her, "because Lee and his Mother said there were some people coming to ask me some questions, and if they asked if that, if Bill, [Petitioner], ever hurt me to say no." She testified if she did not say no "That they were going to beat my A for I couldn't sit down." ECF No. 53-10 at 285-186. She testified in another court proceeding she said under oath Petitioner did not hurt her. ECF No. 53-10 at 287. Victim testified she is afraid of Petitioner, but not in court where she was testifying, because "the cops will protect you." ECF No. 53-10 at 290. If counsel had cross-examined Victim, this incriminating evidence would have been emphasized to the jury which would have been obviously damaging to Petitioner. Petitioner's counsel wisely did not do what Petitioner raises as an act of ineffective assistance of counsel.

Additionally, in response to Petitioner's argument trial counsel failed to cross-examine Victim, Respondent notes trial counsel testified he had other witnesses ready to testify to her recantations, but chose to focus the jury's attention on Victim's recantations during cross-examination of Amanda Dick. Trial counsel was aware the jury knew she had recanted and trial counsel testified he prepared another witness to testify to the victim's recantations, if needed.

All of the arguments Petitioner asserts in his Ground One submission concerning the corroboration rule and the cross-examination of Victim go to challenging trial counsel's strategic trial decisions. This Court examined each allegation on merit review of Ground One and finds trial counsel's representation did not fall below an objective standard of reasonableness, nor is there a reasonable probability, even if Petitioner's claims of unprofessional errors are true, the result of the proceeding would have been different. The Magistrate Judge did not need to substantively address Petitioner's arguments because his claim was defaulted. However, the Court conducted a merits review of the claims, and will deny these claims.

2. Ground Two

Ground Two, in part, is defaulted by Petitioner's failure to raise clams trial counsel was ineffective for failing to effectively cross-examine and impeach Marilyn McCoy, Amanda Dawn Dick (Miller) ("Dawn Dick"), who is Victim's mother, Victim, the S.A.F.E. Examiner Catherine Blevins and for failing to call Mary Dick Owens as an adverse defense witness to impeach her credibility. While in his appeal of the state court's denial of post-conviction relief, Petitioner raised his claim his counsel failed to recuse himself, which the Court will address, hereafter, in his current claim, he added trial counsel's alleged failure to impeach Marilyn McCoy, Dawn Dick and Victim as well as a failure to call Mary Dick Owens as an adverse witness. Petitioner makes no showing of cause and prejudice to overcome this default. While these claims were not

presented in state court and accordingly, need not to be reviewed, because they are unexhausted claims, the Court will nevertheless conduct a merits review of the defaulted claims.

As to the alleged failure to call Mary Dick Owens as an adverse witness, it is not clear what Petitioner means by claiming trial counsel failed to "call as an adverse defense witness Mary Dick Owens . . ." He contends entitlement of trial counsel to cross-examine her about prior inconsistent statements. First, his counsel has broad discretion in calling witnesses. Secondly, there is no way to know, if she had been called as a defense witness, whether she could have been declared a hostile witness for the purpose of cross examination. Finally, Petitioner claims she testified previously, "she was putting cream that she received from a doctor on [Victim's] vaginal area" and another time "she testified to [Victim's] statement concerning petitioner 'putting his finger up there.'" The statements relate to separate instances and are not inconsistent. There is no showing the out-of-court statement of Victim would be admissible by this witness. Petitioner claims there are inconsistencies in other statements at another hearing but, he fails to support this claim with proof of the inconsistencies, how they are material or what statements other witnesses he identifies would have made to challenge the statements, many of which are hearsay. For these reasons, his claim as to Ms. Owens fails.

An examination of Petitioner's claim trial counsel was ineffective in failing to cross-examine and impeach the credibility of Dawn Dick by failing to show an inconsistency in her testimony in separate hearings reveals there is no showing by Petitioner of how these claimed failures of trial counsel prejudiced him.

Petitioner claims trial counsel failed to "effectively cross-examine and impeach" Dawn Dick's testimony at the 491 hearing and at atrial. He describes at one hearing Ms. Dick's testimony was inconsistent with another witness, Mary Dick Owens, concerning how Victim was

walking after she wanted to go to the bathroom, crying from pain. Petitioner claims Ms. Dick's testimony is inconsistent because she states she and Marilyn McCoy "looked at [Victim]" but failed to mention a fourth person, Mary Dick being present. This and the other proffered claimed inconsistencies are immaterial and more significantly, should never be emphasized to the jury, e.g. "At trial [Ms. Dick] testified that [Victim] said at the hospital that daddy was 'licking' her and he stuck his 'dirty finger in her,'[h]owever at the 491 hearing she testifies that [Victim] only said that Daddy hurt her." Petitioner engages in a metaphysical analysis, seeking to expose inconsistencies, without considering the consequences or harm it would have caused to him if this had been emphasized before the jury. These are immaterial inconsistencies, and there is no showing how this would change the outcome of the case. Therefore, his claim as to Dawn Dick fails.

Contrary to Petitioner's complaint about trial counsel's cross-examination of Catherine Blevins, the S.A.F.E. examiner, the transcript reveals effective cross-examination. Trial counsel secured an admission another person took the history for the S.A.F.E. examination, not Ms. Blevins. He was successful in having her admit there were no allegations in the S.A.F.E. examination report of anal penetration of Victim, thereby casting doubt on other evidence by Victim her father put a stick in her butt, or penetrated her butt with his penis getting bowel stool on his penis and she admitted she had no information from the mother or any family member supporting a claim of anal penetration. Trial counsel obtained an admission from Ms. Blevins her "physical findings were listed as abnormal but inconclusive." She said the redness around the vaginal area was significantly abnormal but inconclusive for sexual abuse. When he asked her if these redness conditions could have been caused by persistent bladder infection, Ms. Blevins replied "Not just a persistent bladder infection, but would have been by significant tissue

breakdown." Trial counsel then reminded her of her prior deposition testimony, but she was unwilling to agree. Trial counsel then read her deposition testimony, asking "And those abnormalities could be explained with a persistent infections?" She even hedged in her answer, but stated "I said it's possible." Trial counsel was successful in getting Ms. Blevins to say the "scar tissue on [Victim's] posterior fourchette" was not related to sexual assault. He was also successful in getting Ms. Blevins to repeat a statement from Victim, Petitioner put medicine on her and Ms. Blevins admitted that was not sexual abuse. Therefore, the record shows Petitioner's claim fails, because trial counsel did effectively cross-examine Catherine Blevins.

Petitioner's unexhausted claims, after merit review, fail to prove trial counsel's representation fell below an objective standard of reasonableness or a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. These claims will be denied.

### C. Analysis of Remaining Claims of Ineffective Assistance of Counsel

The remaining claims of ineffective assistance of counsel are included in Petitioner's grounds two, three, four, five, and six. Grounds One and Two were, in part, discussed *supra*.

#### 1. Ground Two

Petitioner contends, in a segment of his Ground Two claim, his trial counsel failed to recuse[3] himself and testify at trial regarding information he learned about the recantation of testimony of the Victim. Petitioner argues trial counsel or trial counsel's investigator would have been the best evidence concerning this recantation, because they were neutral and detached. Further, Petitioner attempts to argue, for the first time, trial counsel's failure to consult with him

---

[3] Although a lawyer may withdraw from a case while a judge may recuse, the Court's opinion will track Petitioner's language.

over his failure to withdraw was a conflict of interest which he did not waive.[4] The Court agrees with the findings in the Report and Recommendation.

There is no dispute, in this case, Victim recanted her statements in an interview with trial counsel, the investigator, and at least three other individuals present. ECF No. 53-10. At trial, counsel elicited this recantation through cross-examination of the victim's mother, a witness for the prosecution. ECF No. 53-10 at 34, 37. The Missouri Court of Appeals found trial counsel's decision not to withdraw and testify was not ineffective assistance of counsel, because the evidence would have been cumulative, because there was testimony of the recantation of the victim and the victim's mother, and the withdrawal of trial counsel would have complicated Petitioner's defense. ECF No. 53-10.

Evidence of the victim's recantation was present in the trial record, and was even mentioned by the prosecuting attorney during her opening statement. ECF No. 53-10. An attorney is not ineffective for failure to present cumulative evidence. *See Forrest v. Steele*, 764 F.3d 848, 859 (8th Cir. 2014). Petitioner cannot establish trial counsel was ineffective on this point, and the Court agrees with the Magistrate Judge's decision this was not an unreasonable application of federal law. First, the record reflected evidence of the recantation, and it was uncontested and even admitted by the other party, so it cannot be successfully argued counsel's testimony was necessary evidence. Further, if counsel had withdrawn, and testified for Petitioner, the jury might have inferred counsel was biased, and not impartial, notwithstanding Petitioner's suggestions. Capturing the recantation on the record on cross-examination removed any possibility of bias against Petitioner.

Petitioner also argues counsel was ineffective for violating ethical rules, and his counsel's failure to recuse himself was a violation of his constitutional rights because he never waived his

_____

[4] This is the first time he has raised a conflict of interest argument but the Court will review the merits of the claim.

right to conflict-free counsel. Petitioner asserts the conflict of interest was his trial counsel's failure to discuss with him the possibility of his withdrawal to testify regarding the recantation. The Court agrees with the Report and Recommendation on this matter, as there was no conflict. "Rule 3.7 of the Rules of Professional Conduct generally prohibits an attorney from simultaneously serving as advocate and witness at a trial." *State v. Mason*, 862 S.W.2d 519, 521 (Mo. Ct. App. 1993). Rule 3.7 of the Missouri Rules of Professional Conduct states:

> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:
> (1) the testimony relates to an uncontested issue;
> (2) the testimony relates to the nature and value of legal services rendered in the case; or
> (3) disqualification of the lawyer would work substantial hardship on the client.

"[A] facet of the right to counsel of choice is the defendant's ability to waive his right to the assistance of counsel unhindered by a conflict of interest, provided that waiver is knowing and intelligent." *United States v. Agosto,* 675 F.2d 965, 969–70 (8th Cir. 1982). Further, an ethical violation does not *per se* render ineffective assistance of counsel. *Burt v. Titlow*, 134 S. Ct. 10, 18 (2013).

Petitioner's trial counsel was not required to obtain Petitioner's waiver as there was no conflict of interest. It is undisputed, as mentioned above, the victim had recanted, and Petitioner's counsel was successful in getting this evidence in the record, through the testimony of the victim's mother. Therefore, his counsel was not a necessary witness. Furthermore, despite Petitioner's contentions, having the victim's mother and the victim both admit to the recantation was his best source for introduction of this evidence as admissions of prosecution witnesses. These claims and objections to the Report and Recommendation will be denied.

2. Grounds Three and Four

Due to the similarity of the claims in Grounds Three and Four, the Court will analyze them together. In Ground Three, Petitioner alleges trial counsel failed to call numerous defense witnesses at the jury trial, saying he supplied his trial counsel with names of twenty-five witnesses who were never contacted. Petitioner believes these witnesses would have testified to Victim's recantations, her inconsistencies, his medical and physical issues, pertinent issues regarding living arrangements in his home and identification of individuals who cared for Victim. In Ground Four, Petitioner faults trial counsel for an alleged "failure to make a reasonable investigation of the case or to make a reasonable decision that a particular investigation was unnecessary in Petitioner's case." Nor, Petitioner asseverates, did counsel obtain critical evidence that would have established Petitioner's innocence at trial. Affidavits of nine individuals are appended to his Petition. Both the state post-conviction court and the Missouri Court of Appeals denied relief on this claim. These must rightfully be considered in federal court.

Allegations Petitioner made about the identity and availability of potential witnesses and information the witnesses allegedly had, which would have been favorable to his defense, do not comport with what he produced to support his claims. While he ascribes detailed information available to his mother, statements he believes would be helpful are mostly absent in her affidavit. The same is true of other potential witnesses who supplied affidavits. In the post-conviction hearing in state court, trial counsel testified to a lack of knowledge of being informed of potential witnesses. Concerning the additional twenty-five witnesses Petitioner claimed he and his mother disclosed to trial counsel, there is no evidence to support this allegation. There is no showing as to what the witnesses would have testified, who they were, and if called, whether they would appear.

Witness selection is customarily in the domain of trial counsel's judgment. As the Magistrate Judge cited, there is a presumption of reasonableness in failure of trial counsel to call witnesses. "Decisions relating to witness selection are normally left to counsel's judgment and this judgment [should not] be second guessed on hindsight." *Williams v. Armontrout,* 912 F.2d. 924, 934 (8th Cir. 1990). The burden is elevated when a habeas petitioner challenges trial counsel's failure to investigate a potential witness. "To establish prejudice from counsel's failure to investigate a potential witness, petitioner must show that the witness would have testified and that their testimony probably would have changed the outcome of the trial." *Siers v. Weber,* 259 F.3d 969, 974 (8th Cir. 2001).

The Court will individually consider, as did the Magistrate Judge, the nine witnesses Petitioner alleges should have been called. The first, in the order considered by the Magistrate Judge, is Karen Turner, Petitioner's mother. His trial counsel offers a logical and reasonable reason for declining to call Ms. Turner. He believed her testimony would be duplicitous and give the appearance of bias in favor of Petitioner. She testified at the state post-conviction hearing, she would have testified, at trial, about living arrangements with Petitioner and Victim, Petitioner suffered from back problems, and Victim's recantations. The Missouri Court of Appeals concluded this would amount to cumulative testimony and trial counsel was not ineffective for not presenting the testimony of Ms. Turner. The Magistrate Judge decided trial counsel's failure to call Ms. Turner as a witness was not objectively unreasonable. The Court agrees.

In Ms. Turner's affidavit, she swore to the following statements: (1) "Billy Turner resided with me at all times during which the crimes charged against him are said to have occurred."; (2) "Whenever Billy Turner had visitation with Savannah, it occurred while he was living at my home. I cannot remember a time when Billy would have been alone with

Savannah."; (3) "Contrary to testimony at trial, Billy Turner never slept with Savannah and never slept in the nude. There was never a time when Savannah and Billy were in the bed together. Billy Turner had his own bedroom and Savannah had her own bedroom."; (4) "Billy Turner was never alone with Savannah during the dates and times when the offenses are said to have occurred. There were always people in my house, including friends and family members." These statements conflict with Petitioner's testimony at trial.

When Petitioner testified in his own defense at trial, his trial counsel inquired about the visitation schedule he followed after his "very contentious" divorce in September 2001. It is undisputed he was awarded custody of Victim every other weekend and two hours each Wednesday. Petitioner answered questions about the living arrangements when he had custody of Victim:

> Trial Counsel: "Now, were you exercising your visitation rights during this time?"
> Petitioner: "Yes, sir."
> Trial Counsel: "Where did you live?"
> Petitioner: "At 305 Miller Street."
> Trial Counsel: "And what town is that in?"
> Petitioner: "East Prairie."
> Trial Counsel: "Is that your home-- was that your home?"
> Petitioner: "Yes."
> Trial Counsel: "What was your mother's address at the time?"
> Petitioner: "It was 2355 South Highway BB."
> Trial counsel: "So were you living with your mother at the time?"
> Petitioner: "No, sir."
> Trial counsel: "And when you had weekend visitations with Savanna, where did you stay?"
> Petitioner: "At my house at 305 Miller."
> Trial Counsel: "And what were the sleeping arrangements on the weekends that you had visitation?"
> Petitioner: "Savanna had her own bedroom, and I had my own bedroom."
> Trial counsel: "And they were in separate rooms in the house?"
> Petitioner: "Yes, sir."
> Trial Counsel: "What type of bed did she have?"
> Petitioner: "She had a twin day bed."

ECF No. 53-10 pp. 294-297. If trial counsel had called Ms. Turner as Petitioner suggests, trial counsel would have introduced testimony absolutely inconsistent with Petitioner's testimony or would have introduced perjured testimony.

Excluding hearsay statements, Affiant Brandy Davis states, if called to testify, she would have stated she lived with Petitioner and Petitioner's mother at all times Petitioner had custody of Victim [5] and she described sleeping arrangements at the residence where Victim and Petitioner were separated. The majority of her testimony in her affidavit conflicts with Petitioner's testimony as noted *supra*. Additionally, in the analysis supra, it is clear in comparing her testimony in her affidavit and Petitioner's testimony at trial, either Petitioner or Ms. Davis is not being truthful. The remainder of her testimony does not contain material evidence.

Robert and Brandy Davis, upon oath, state they lived with Billy and Karen Turner "at all times when he had custody and visitation with his daughter, Savannah and Billy was never alone with her." They say "Billy never bathed, dressed, or clothed Savannah," and "Billy never slept in the same bedroom as Savannah as she had her own bedroom." Further, they state, "Billy never had the opportunity to do any of the things with Savannah of which he was accused[][;] [h]e was never alone with Savannah[][,and] [t]here were people around at all times." This conflicts with Petitioner's testimony at trial.

The remaining affidavits are not persuasive to support Petitioner's claims. Excluding hearsay, Affiant Sarah Haddock states, if called to testify, she would have stated she was never contacted by Petitioner's trial counsel. This is meaningless because she had no admissible evidence helpful to Petitioner. Excluding hearsay, Affiant Micah Haddock states, if called to testify, he would have stated he never observed Victim [6] to be afraid of Petitioner. This evidence

---

[5] Affiant references Victim by her name.
[6] Affiant references Victim's name.

is not material nor of the nature of evidence that would change the outcome of the case. Affiant Austin Blake Gifford and Joyce Cobb's affidavits exclusively contain hearsay. Excluding hearsay, Affiant Pam Waldo states, if called to testify, she would have stated she had four meetings with the public defender investigator and two meetings with Petitioner's counsel and his investigator concerning the allegations regarding Petitioner and Victim.[7] There is nothing in her testimony of a material nature. Her testimony, if allowed, would not have changed the outcome of the case. Excluding hearsay, Affiant Danielle Lynn Patrick states if called to testify, she would have stated her relationship with family members, observations of interactions of family members and character opinions of family members and associates. She offers no material facts in her affidavit. Her testimony, if allowed, would not have changed the outcome of the case.

The Court agrees with the Magistrate Judge's conclusions concerning the nine individuals who filed affidavits. Petitioner has not shown his trial counsel was aware of these witnesses, except for Pam Waldo and Karen Turner. At the state post-conviction hearing, trial counsel never recalled hearing names of these witnesses. Most of the statements in the affidavits were based on inadmissible hearsay. Other information, otherwise receivable in evidence, was included in testimony of other witnesses, was testimonially insignificant, or conflicted with Petitioner's own testimony at trial. Trial counsel's failure to investigate, to the extent Petitioner's counsel did not investigate and locate any of these witnesses, and failure to present the testimony from witnesses interviewed and not called to testify, does not cause his performance to fall below an objective standard of reasonableness. *Parker v. Bowersox,* 94 F.3d 458, 461 (8th Cir. 1996). The Court has considered the testimony of the nine affiants and concludes, individually and collectively, there is no prejudice to Petitioner for failure to call any or all of these witnesses.

---

[7] Affiant references name of Victim.

The remaining allegations in Grounds Three and Four also fail to establish ineffective assistance of counsel on the part of trial counsel.[8] His allegations of how information concerning medical reports on Victim, not presented to the jury, would have changed the trial result will be discussed under the section addressing the actual innocence claim. In Ground Four, Petitioner also claims his trial counsel was provided notes between himself and Victim's mother, concerning medication applied to Victim's "woobie," an appellation Victim crafted to reference her vaginal area. Victim suffered from a persistent rash on that area of her body. Petitioner believes these notes could have been used to impeach Victim's mother, Dawn Dick, because he believes she stated there was no medications for application to that area of the rash. Petitioner fails to recognize, or he has forgotten, the trial testimony of Victim's mother. The following questions were asked and answers given by Victim's mother:

> Q. And who all looked at Savannah?
> A. It was me, my mom and Marilyn.
> Q. And how did that look to you?
> A. It was all red and scaly, and it looked like it was almost bleeding. And it was real big.
> Q. And what did you do?
> a. I took her to the emergency room.
> Q. Now, when - - did she give you an explanation as to how - - when she said her daddy hurt her, any explanation as to how that happened?
> A. She said that - - when I asked her how she got all red and stuff down there, she said that her dad was licking on her.
> Q. Did she say anything about daddy's dirty finger?
> A. Yes.
> Q. What did she say?
> A. She said that he stuck his dirty finger in her Woobie. [Doc. No. 53-10 pp 133-134].

Obviously, positing a series of questions about Victim's rash would invite scathing redirect examination. There is no ineffective assistance of counsel for not asking questions that would end with Victim's mother highlighting the sexual abuse of her daughter by Petitioner. The Court

---

[8] In Ground Three, Petitioner raises the issue of trial counsel's alleged failure to introduce testimony from Dr. Hoffman or Dr. Coplen. The Court will address this issue as part of Ground Five, Petitioner's claim trial counsel failed to call expert witnesses.

will adopt the Magistrate Judge's Report and Recommendation in regards to Grounds Three and Four of Petitioner's Petition to the extent no ineffective assistance of counsel was found.

### 3. Ground Five

In Ground Five, trial counsel's failure to call as an expert witness, Douglas Coplen, M. D., did not fall below an objective standard of reasonableness. It remains undisputed Dr. Coplen could not provide an adequate defense to Petitioner. Trial counsel secured a stipulation, Dr. Blanton, a witness for the state, would not testify there was an abnormal opening between Victim's anus and vagina; therefore, Dr. Coplen's testimony was not required to rebut Dr. Blanton's testimony of the presence of such an anomaly.

In the state post-conviction proceeding, Petitioner's counsel deposed James Hoffman, M.D. to support Petitioner's motion. While he initially stated he believed Victim's medical records would not support a finding of sexual abuse, he flipped, on cross-examination, stating the findings could be consistent with sexual abuse. The state courts and the Magistrate Judge were correct in concluding this testimony would not support a viable defense. Trial counsel's performance did not fall below an objective standard of reasonableness for not calling an expert witness who would not support a defense for Petitioner.

Petitioner also claims, in Ground Five, his trial counsel failed "to draw attention to the improper interview techniques utilized by Ms. Blevens in her SAFE exam interview, in addition to her incorrect conclusion of sex abuse based upon her physical exam of [Victim] and interview."

Likewise, there is no finding of ineffective assistance of counsel for failure of trial counsel's investigator to "procure the services of an expert to review medical records and SAFE exam and offer testimony refuting their conclusions and forming a basis of a viable defense."

The Court has examined the medical records, and there is nothing there to benefit Petitioner; any expert witness would be of no help to him on this claim. He does not offer suggestions of what the expert would have found in examining the S.A.F.E. exam and how any information he learned from such an examination would have benefitted Petitioner. Furthermore he does not state the nature of a defense an expert could promote. This claim has no merit to support a claim of ineffective assistance of counsel.

### 4. Ground Six

In Ground Six, Petitioner claims a due process violation of the Fourteenth Amendment to the United States Constitution, because newly discovered evidence clearly and convincingly establishes Petitioner is actually innocent "thus undermining confidence in his conviction."

Petitioner claims medical evidence and affidavits offer new evidence to show he is actually innocent of the crimes for which he has been convicted. Respondent argues Petitioner's claim of actual innocence must fail as being non-cognizable in federal habeas review, citing *Herrera v. Collins*, 506 U.S. 390, 400 (1993). Furthermore, Respondent argues Petitioner does not plead facts sufficient to support the claim.

This Court adopts the Magistrate Judge's excellent analysis of the law on the issue of actual innocence, as the concept is applied in a *habeas corpus* analysis. She writes:

> [Petitioner]states that he is actually innocent. There are two types of actual innocence claims. The first type serves as a "gateway" to allow the court to consider the petitioner's defaulted claims. To establish a gateway actual innocence claim, the petitioner must demonstrate in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him in light of new evidence. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). Actual innocence means factual innocence, not mere legal insufficiency. *Bousley v. U.S.*, 523 U.S. 614, 623 (1998). The standard is demanding and permits review only in the extraordinary case. *House v. Bell*, 547 U.S. 518, 538 (2006). "If a petitioner presents sufficient evidence of actual innocence, he should be allowed through this gateway permitting him to argue the merits of his underlying constitutional claims." *Armine v. Bowersox*, 128 F.3d 1222, 1227 (8th Cir. 1997). "Claims of

actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). "This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution- not to correct errors of fact." *Id.* "The gateway should open only when a petition presents evidence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1936 (2013) (citing *Schlup*, 513 U.S. at 316)). . . .

An independent claim of actual innocence requires an even higher standard of review than a gateway actual innocence claim. *Bell*, 547 U.S. at 555. Although the Supreme Court has not clearly articulated the quantum of proof necessary for a claim based solely on actual innocence, it is clear that such claims require that the court be convinced that those new facts unquestionably establish the petitioner's innocence. *Cornell v. Nix*, 119 F.3d 1329, 1334 (8th Cir. 1997).

Petitioner's claim of actual innocence fails. The affidavits concerning recantations of Victim present no new evidence. Her recantation has been presented before the state courts, as discussed *supra*.

Because Petitioner appeared persuasive at a motion hearing,[9] this Court secured medical records which Petitioner claimed would certainly exonerate him. An *in camera* inspection was conducted on records from the two medical facilities which treated Victim. The foundational events which led to Petitioner's charges resulting in incarceration of Petitioner occurred in November 2001. On October 17, 2000, Victim was taken to the emergency room by Petitioner when Victim was three years old. On January 28, 2001, Victim was taken to the emergency room by her mother. The medical record of October 17, 2000, states "daughter went to use the bathroom, dad's sister & Mom went to check on her & there was blood on the toilet seat. She told her dad that her Mom stuck a knife & marker in her vagina." The Court has examined portions of the state court trial transcript. This is not new evidence. At a pre-trial conference the prosecutor stated before the trial judge,

---

[9] To be distinguished from an evidentiary hearing, which was not held in this case.

> We're seeking to exclude certain evidence at trial, your honor. Specifically, we'd like to exclude any kind of examination or argument or inference blaming others for the sexual abuse that this child has suffered. I believe that there is a possibility that the defense may try to elicit testimony that [Victim] was taken to an emergency room at one point, and the emergency room people were told by the defendant that the mother, not the defendant,, but the mother had placed a knife up the little girl's vagina and it caused injury. And that was unsubstantiated, and I would like it to be excluded as any kind of inference that that was the actual molestation that occurred.

Defense counsel replied, "No response, Judge. We did not intend to get in any evidence regarding those original allegations." ECF No. 53-10. The hearsay Petitioner claims is new obviously was known at the time of his trial. There is no new evidence. This Court carefully examined, *in camera,* medical records from the two institutions referenced. There is no other information in those records to support any claim of actual innocence of Petitioner.

*D. Ineffectiveness of Initial Review or Post Conviction Counsel*

In his reply brief, Petitioner states he received ineffective assistance of post-conviction counsel in his post-conviction proceeding. Until relatively recently, a prisoner was not entitled to bring such a claim of ineffective assistance of post-conviction counsel, but a limited exception is recognized in *Martinez v. Ryan,* 132 S. Ct. 1309, 1320 (2012). Under the independent and adequate state grounds doctrine, "a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule," where that procedural rule is, *inter alia,* "firmly established and consistently followed." *Id.* However, a federal court may review the merits, in the rare case, where "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

In *Martinez*, the Supreme Court expanded what may constitute cause for the default, holding "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish

cause for a prisoner's procedural default of a claim of ineffective assistance at trial." 132 S.Ct. at

1315. In so doing, the Court recognized a limited exception to *Coleman v. Thompson,* which had

held that ineffective assistance of a post-conviction attorney could not constitute cause for a

procedural default. *Id.* at 1319.[1] The Supreme Court, in *Martinez,* distinguished between attorney

errors in initial-review collateral proceedings versus errors in other kinds of collateral

proceedings, explaining, "[w]hen an attorney errs in initial-review collateral proceedings, it is

likely that no state court at any level will hear the prisoner's claim," whereas when counsel errs

in other kinds of collateral proceedings, at least "the claim will have been addressed by one

court." *Id.* at 1316. The *Martinez* Court held that in the very limited circumstance when state law

requires prisoners to raise an ineffective assistance of counsel claim in a collateral proceeding:

> [A] prisoner may establish cause for a default of an ineffective-assistance claim
> in two circumstances. The first is where the state courts did not appoint counsel in
> the initial-review collateral proceeding for a claim of ineffective assistance at
> trial. The second is where appointed counsel in the initial-review collateral
> proceeding, where the claim should have been raised, was ineffective under the
> standards of *Strickland v. Washington* ... To overcome the default, a prisoner must
> also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim
> is a substantial one, which is to say that the prisoner must demonstrate that the
> claim has some merit.

*Martinez,* 132 S.Ct. at 1318. Spoken another way, where state law bars a defendant from raising

claims of ineffective assistance of trial counsel on direct appeal, "a procedural default will not

bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in

the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was

ineffective." *Id.* at 1320; *see also Dansby v. Norris,* 682 F.3d 711, 728 (8th Cir. 2012), *adhered*

*to on denial of reh'g sub nom. Dansby v. Hobbs,* 691 F.3d 934, 936 (8th Cir. 2012).

---

[1]Prior to *Martinez,* it was settled law that ineffective assistance of post-conviction counsel could not establish cause
and prejudice to excuse a procedural default because there existed no constitutional right to post-conviction counsel.
*Lopez v. Ryan,* 678 F.3d 1131, 1136 (9th Cir. 2012); *See, e.g., Coleman*, 501 U.S. at 752 - 54.

Under Missouri law, ineffective assistance of counsel claims must first be raised in a Rule 29.15 collateral proceeding. Mo. Sup. Ct. R. 29.15 (stating that "Rule 29.15 provides the exclusive procedure by which such person may seek relief in the sentencing court" for ineffective assistance of counsel, among other violations). Furthermore, "any allegations or issues that are not raised in the Rule 29.15 motion are waived on appeal," including ineffective assistance of counsel claims. *State v. Clay,* 975 S.W.2d 121, 141 (Mo. 1998); *see also State v. Taylor,* 1 S.W.3d 610, 612 (Mo. Ct. App. 1999) (stating that "[c]laims of ineffective assistance of counsel are not cognizable in a direct appeal," but must be raised first in a Rule 29.15 proceeding).

Missouri's law requiring an ineffective assistance of counsel claim to be raised first in a collateral proceeding mirrors the Arizona state law at issue in *Martinez. Osborne v. Purkett*, No. 03-653-CV-W-NKL, 2012 WL 5511676, at * 3 (W.D. Mo. Nov. 14, 2012). As *Martinez* notes, to overcome default, Petitioner must also demonstrate that the *underlying* ineffective assistance of trial claim is a "substantial one, which is to say that the prisoner must demonstrate that the claim has some merit."[10] *Id.* With respect to what constitutes a "substantial" claim, the *Martinez* Court suggested, by citing *Miller–El v. Cockrell,* 537 U.S. 322 (2003) (describing standards for certificates of appealability to issue), that courts should apply the standard for the issuance of certificates of appealability. *Martinez,* 132 S.Ct. at 1318 - 19. *See also Bender v. Wynder*, No. 05-998, 2012 WL 6737840, at *3 (W.D. Pa. Dec. 28, 2012). Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may issue only if "a petitioner has made a substantial showing of the denial of a constitutional right." *See Miller–El,* 537 U.S. at 335–36 (describing standard); *Garrett v. United States,* 211 F.3d 1075, 1076 (8th Cir. 2000) (same); *Carter v. Hopkins,* 151

---

[10] Concluding that the ineffectiveness of trial counsel claim "has some merit" is *not* the equivalent of concluding that this ineffectiveness claim is meritorious under *Strickland v. Washington,* 466 U.S. 668. *Sheppard v. Robinson*, No. 1:00-CV-493, 2013 WL 146342, at * 13 (S.D. Ohio 2013).

F.3d 872, 874 (8th Cir. 1998) (same); *Cox v. Norris,* 133 F.3d 565, 569 (8th Cir. 1997) (same).

"A substantial showing is a showing that issues are debatable among reasonable jurists, a court

could resolve the issues differently, or the issues deserve further proceedings." *Cox,* 133 F.3d at

569; *see also Miller–El,* 537 U.S. at 336 (explaining standard). When the district court denies

relief on procedural grounds, to obtain a certificate of appealability, the prisoner must

demonstrate *both* that the dispositive procedural ruling is debatable, and that the petition states a

debatable claim of the denial of a constitutional right. *Slack v. McDaniel,* 529 U.S. 473, 484–85

(2000).

Petitioner is entitled to no relief on the basis of ineffectiveness of post-conviction

counsel. There is no substantial claim for ineffectiveness of post-conviction counsel. Petitioner

fails to adequately state why he is entitled to relief because of the representation of post-

conviction counsel, and he fails to show how he was prejudiced by counsel's performance.

### E. Disqualification of Magistrate Judge

Petitioner makes two separate objections as to why the entire Report and

Recommendation should be dismissed because the Magistrate Judge should have recused. First,

Petitioner argues the Magistrate Judge was a presiding judge in the Missouri Court of Appeals in

the Eastern District, during the appeal of his conviction and she is accordingly biased. Second,

Petitioner argues it was extremely unfair for her to fail to issue a subpoena for the victim's

medical records, and concluding the petitioner has not presented any new evidence, citing

*National Labor Relations Board v. Frazier*, 966 F.2d 812, 816 (3d Cir. 1992), and *Pennsylvania*

*v. Ritchie*, 480 U.S. 39, 56 (1987) for support.

First, the Court should note the Magistrate Judge served as a judge for the Eastern

District of the Missouri Court of Appeals in 2004, and served as Chief Judge of the Court of

Appeals in 2008 and 2009. Petitioner's appeal of conviction occurred during this time period and was heard before Judges Hoff, Sullivan, and Draper. ECF No. 53-8. The Magistrate Judge did not specifically hear Petitioner's case.

A fair trial is one of the hallmarks of due process, and is a basic requirement of due process. *Dyas v. Lockhart*, 705 F.2d 993, 995 (Mo. Ct. App. 1983). "[N]o man is permitted to try cases where he has an interest in the outcome." *In re Murchison*, 349 U.S. 133, 136 (1955). Further, a judge should recuse herself, "in any proceeding in which [her] impartiality might reasonably be questioned." 28 U.S.C. § 455(a).

The Magistrate Judge did not hear this case when she was on the Missouri Court of Appeals, and any connection she had with the case was through administrative duty. In *Kendrick v. Carlson*, a former Assistant United States Attorney, who worked in the same district office who brought the case against the defendant, was not prejudiced from hearing the case as a sitting judge, because he was not actively involved in the case. 995 F.2d 1440 (8th Cir. 1993); s*ee also*, *United States v. Di Pasquale*, 864 F.2d 271, 278-279 (3d Cir. 1988). This is different than the case of *Mixon v. United States*, where the Magistrate Judge was required to recuse himself because of his past work as government counsel on this very same issue. 620 F.2d 486, 487 (5th Cir. 1980). There is no prejudice in this case or even appearance of bias, and the Magistrate Judge had no obligation to recuse herself.

Petitioner also objects to the Report and Recommendation by arguing it was unfair for the Magistrate Judge to fail to issue a subpoena for medical records he wished to present. Rule 7 of the Rules Governing Section 2254 cases allows for judges to direct parties to submit additional records to the Court. Rule 7, Rules Governing Section 2254 Cases. Medical records have been secured and reviewed. This objection is moot.

*F. Claim of Error for Magistrate Judge Using Improper Standard of Review*

First, Petitioner avers the Magistrate Judge failed to analyze the cumulative effect of all of the errors under the prejudicial prong of the *Strickland* standard. Second, he believes the Magistrate Judge did not follow the standard set in *Gabaree v. Steele*. 792 F.3d 991, 996 (8th Cir. 2015), *cert. denied sub nom. Griffith v. Gabaree*, 136 S. Ct. 1194 (2016).

Petitioner first asserts the Magistrate Judge erred by failing to properly ascertain whether the cumulative error to him was prejudicial. The Magistrate Judge must perform a cumulative error analysis on each individual error the Court finds in regards to ineffective assistance of counsel, to determine if the cumulative effect of each of the errors is prejudicial, even if one error by itself is not prejudicial. *Strickland,* 466 U.S. at 695, 696. Petitioner is correct the Magistrate Judge's Report and Recommendation did not contain an analysis on the cumulative prejudicial effect of counsel's deficient performance, but such an analysis was unnecessary because the Magistrate Judge correctly determined trial counsel's performance was not deficient for each of Petitioner's claims. Since, Petitioner's trial counsel was not deficient on each claim, and there were no errors, the Magistrate Judge's Report and Recommendation did not need to perform a cumulative analysis. This Court's cumulative analysis finds no instances of ineffective assistance of counsel.

Petitioner next asserts the Magistrate Judge did not follow the standard set in *Gabaree v. Steele*. *Gabaree* held counsel's performance was deficient where counsel did not object to improper bolstering of witness testimony by a state expert and this deficiency so prejudiced the petitioner he was granted relief and entitled to a new trial on these charges. 792 F.3d at 998. The Court recognizes *Gabaree* has some factual similarities with the present case. However, this alone does not guarantee relief. The court in *Gabaree* followed the *Strickland* standard, noting

first an error was identified, counsel's performance was deficient, and then counsel's conduct was found to be prejudicial. Simply because the court in *Gabaree* found for the petitioner on one count of his habeas petition, does not mean the Eighth Circuit has created a new standard, nor does it mean the Magistrate Judge made an incorrect application of federal law in finding no relief for the Petitioner. This claim will be denied.

*G. Petitioner's Motion for Appointment of Counsel and Motion for An Evidentiary Hearing*

Petitioner requests the Court appoint him counsel and grant an evidentiary hearing on the claims raised in his Petition. The Court may appoint counsel when "the interests of justice so require." *Abdullah v. Norris*, 18 F.3d 571, 573 (8th Cir. 1994). When an evidentiary hearing is not conducted, appointment of counsel is discretionary and the court should consider the legal and factual complexity of the case, the petitioner's ability to investigate and present his claims, and any other relevant factors. *Hoggard v. Purkett*, 29 F.3d 469, 471 (8th Cir. 1994). "Where the issues involved can be properly resolved on the basis of the state court record, a district court does not abuse its discretion in denying a request for court-appointed counsel." *Id*. Here, the legal and factual issues in this case are not complex, many of Petitioner's claims are defaulted, and the remaining claims are easily resolved on the basis of the record. Petitioner has demonstrated an ability to identify legal issues and research and argues those issues. For these reasons, the Court will not appoint counsel for Petitioner.

The Court will also deny Petitioner an evidentiary hearing. "Under 28 U.S.C. § 2254(e)(2), the court shall not hold an evidentiary hearing, unless" Petitioner shows his claim relies on a new rule of constitutional law or a "factual predicate that could not have been previously discovered through the exercise of due diligence" and the facts underlying the claim would establish "clear and convincing evidence that but for constitutional error, no reasonable

factfinder would have found" Petitioner guilty. *White v. Dingle*, 757 F.3d 750, 757 (8th Cir. 2014) (citing 28 U.S.C. § 2254(e)(2)). Petitioner's claims do not meet this standard; thus, the Court will not grant an evidentiary hearing.

## IV. Certificate of Appealability

A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 481, 120 S. Ct. 1595, 1602, 146 L. Ed. 2d 542 (2000). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). Petitioner has not presented arguments which would inspire debates among reasonable jurists on any claim. No certificate of appealability will be granted on any claim.

## V. CONCLUSION

For all of the reasons assigned, the Court adopts the Magistrate Judge's Report and Recommendation that all claims for relief in Grounds One, Two, Three, Four, Five and Six, and all other claims presented by Petitioner be, in all respects, denied. The state court findings and conclusions regarding Petitioner's claims were not contrary to, nor do they involve an unreasonable application of clearly established law as determined by the Supreme Court of the United States, nor did they result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Because Petitioner has made no showing f a denial of a constitutional right, no certificate of appealability will be issued.

Accordingly,

**IT IS HEREBY ORDERED** that the Report and Recommendation of United States Magistrate Judge [ECF No. 66] is **SUSTAINED, ADOPTED, AND INCORPORATED** herein.

**IT IS FURTHER ORDERED** Petitioner's Amended Petition and all other grounds he raised for Writ of *Habeas Corpus* [ECF No. 10] are **DENIED.** Petitioner's Amended Petition and all other grounds he raised are **DISMISSED, with prejudice**.

**IT IS FURTHER ORDERED** that Petitioner's Motion for Appointment of Counsel and an Evidentiary Hearing [ECF No. 111] is **DENIED.**

**IT IS FURTHER ORDERED** that the Court shall not issue a certificate of appealability as to any claim raised by Petitioner.

Dated this 25th day of July, 2016.

_____
E. Richard Webber
Senior United States District Judge